No. 26-2348

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| PATRICE DANIELS, GERRODO FORREST, JOSEPH HERMAN, HENRY HERSMAN, RASHEED McGEE, FREDERICKA LYLES, and CLARA PLAIR,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>LATOYA HUGHES, Director of the Illinois Department of Corrections; DR. MELVIN HINTON, Chief of Mental Health; DR. WILLIAM PUGA, Chief of Psychiatry; and JB PRITZKER, Governor of the State of Illinois, in their official capacities,<br><br>Defendants-Appellees. | ) | Appeal from the United States District Court for the Central District of Illinois<br><br>No. 1:07-cv-01298-MMM<br><br>The Honorable JONATHAN E. HAWLEY, Judge Presiding. |

**BRIEF OF DEFENDANTS-APPELLEES**


**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3300

Attorneys for Defendants-Appellees

**CHRISTINA T. HANSEN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-6569 (office)
(872) 272-0819 (cell)
Christina.Hansen@ilag.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

JURISDICTIONAL STATEMENT .......... 1

ISSUES PRESENTED FOR REVIEW .......... 5

STATEMENT OF THE CASE .......... 6

Plaintiffs Filed a Class Action Complaint .......... 6

The Parties Reached an Agreement .......... 7

The District Court Approved the Agreement .......... 9

Plaintiffs Sought to Enforce the Agreement .......... 11

The Parties Modified the Agreement .......... 13

This Court Issued the *Rasho* Decision .......... 15

The Parties Agreed to a Negotiation Plan .......... 16

After Further Litigation, the District Court Dismissed the Action for Lack of Subject Matter Jurisdiction .......... 17

This Court Vacated the Judgment and Remanded with Instructions .......... 19

Proceedings on Remand .......... 20

SUMMARY OF ARGUMENT .......... 25

ARGUMENT .......... 27

I. The district court complied with this court's mandate. .......... 27

II. This court should affirm the judgment because plaintiffs' claims became moot when the district court approved the parties' settlement. .......... 30

A. By its plain language, the agreement fully resolved plaintiffs' claims .......... 30

B. The parties treated the agreement as a final resolution of the action .......... 34

C. Plaintiffs' arguments against finality are at odds with the plain terms of the agreement and the proceedings. .......... 36

1. The district court's equitable power to return the case to its active docket did not render the settlement nonfinal. ................. 37

2. The agreement released plaintiffs' claims. .................................. 39

3. The agreement was not contingent on court findings of compliance but instead required plaintiffs to demonstrate violations to extend its term........................................................ 42

4. Nothing in the fairness hearing transcript or class notice suggests that the parties did not intend to finally resolve this case. ........................................................................... 45

5. The parties' decision to amend the agreement in 2020 did not suggest that the agreement did not moot plaintiffs' claims. ....... 47

III. This case should have terminated upon the expiration of the district court's enforcement authority, even as plaintiffs can pursue any new claims they may feel they have in another action.................................................................. 48

CONCLUSION ........................................................................................... 51

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Air Safety, Inc. v. Tchrs. Realty Corp.*,
185 Ill. 2d 457 (1999) .......... 34

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) .......... 48

*Barrington Music Prods. v. Music & Arts Ctr.*,
924 F.3d 966 (7th Cir. 2019) .......... 45

*Bernstein v. Bankert*,
733 F.3d 190 (7th Cir. 2011) .......... 32

*Burritt v. Ditlefsen*,
807 F.3d 239 (7th Cir. 2015) .......... 45

*Chi. Inv. Corp. v. Dolins*,
107 Ill. 2d 120 (1985) .......... 33

*Clanton v. Oakbrook Healthcare Ctr. Ltd.*,
2023 IL 129067 .......... 31, 32, 34

*Corey H. v. Chi. Bd. of Educ.*,
528 F. App'x 666 (7th Cir. 2013) .......... 49

*Daniels v. Hughes*,
147 F.4th 777 (7th Cir. 2025) .......... passim

*Doe v. Cook Cnty.*,
798 F.3d 558 (7th Cir. 2015) .......... 15

*Fishburn v. Barker*,
165 Ill. App. 3d 229 (3d Dist. 1988) .......... 40

*Gallagher v. Lenhart*,
226 Ill. 2d 208 (2007) .......... 31

*Haisma v. Edgar*,
218 Ill. App. 3d 78 (1st Dist. 1991) .......... 30

*Ill. State Bar Ass'n Mut. Ins. Co. v. Brooks, Adams & Tarulis*,
2014 IL App (1st) 132608 .......... 31

*In re A.F. Moore & Assocs.*,
974 F.3d 836 (7th Cir. 2020) .......... 28

*In re Estate of Holms*,
2019 Ill. App. (2d) 190139 .......... 31

*Lampe v. 0' Toole*,
292 Ill. App. 3d 144 (2nd Dist. 1997) .......... 40

*Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*,
762 F.3d 673 (7th Cir. 2014) .......... 31

*Lynch, Inc. v. Samatamason, Inc.*,
279 F.3d 487 (7th Cir. 2002) .......... 46

*Malek v. Chuhak & Tescon, P.C.*,
2023 IL App (1st) 220732 .......... 40, 48

*Martin v. Spring Break '83 Prods., LLC*,
688 F.3d 247 (5th Cir. 2012) .......... 40, 41

*McCoy v. Chi. Heights Election Comm'n*,
880 F.3d 411 (7th Cir. 2018) .......... 30

*Motorola Sols., Inc. v. Hytera Commc'ns. Corp., Ltd.*,
108 F.4th 458 (7th Cir. 2024) .......... 45

*Newton v. Aitken*,
260 Ill. App. 3d 717 (2d Dist. 1994) .......... 38

*Pate v. City of Sesser*,
75 Ill. App. 3d 233 (5th Dist. 1979) .......... 40

*Rasho v. Jeffrey*,
22 F.4th 703 (7th Cir. 2022) .......... 2, 12, 15, 33

*RIV VIL, Inc. v. Tucker*,
979 F. Supp. 645 (N.D. Ill. 1997) .......... 41

*Selcke v. New England Ins. Co.*,
2 F.3d 790 (7th Cir. 1993) .......... 30, 36, 37

*Shapo v. Engle*,
463 F.3d 641 (7th Cir. 2006) .......... 10, 42, 46

*Sheehy v. Sheehy*,
299 Ill. App. 3d 996 (1st Dist. 1998) .......... 41

*Spath v. Hayes Wheels Int'l-Ind., Inc.*,
211 F. 3d 392 (7th Cir. 2000) .... 49

*Thompson v. Gordon*,
241 Ill. 2d 428 (2011) .... 31

*U.S. Bancorp Mortg. v. Bonner Mail P'ship*,
513 U.S. 18 (1994) .... 40

*United States v. Brown*,
871 F.3d 532 (7th Cir. 2017) .... 39

*Vision Energy, LLC v. Smith*,
2025 IL App (3d) 240114 .... 31

**Statutes**

18 U.S.C. § 3626(a)(1)(A) .... 9

28 U.S.C. § 1291 .... 4

28 U.S.C. § 1331 .... 1

28 U.S.C. § 1404(a) .... 50

28 U.S.C. § 2107(a) .... 3

29 U.S.C. § 794 .... 1

42 U.S.C. § 12101 .... 1

42 U.S.C. § 1983 .... 1, 7, 36

42 U.S.C. § 1988 .... 36

**Other Authorities**

Fed. R. App. P. 4(a)(4)(A)(iv) .... 3

Fed. R. Civ. P 60(b) .... 3

Fed. R. Civ. P. 23(b)(2) .... 1, 6

Fed. R. Civ. P. 23(e) .... 14, 34, 35, 43

Fed. R. Civ. P. 25(d) .... 2

Fed. R. Civ. P. 58 ........................................ 3

Fed. R. Civ. P. 59(e) ........................................ passim

Fed. R. Civ. P. 60(b)(6) ........................................ 19, 22, 23

Fed. R. Civ. P. 62.1(a) ........................................ 4, 29

Fed. R. Evid. 704(a) ........................................ 39

7th Cir. R. 28(b) ........................................ 1

*Black's Law Dictionary* (12th Ed. 2024) ........................................ 32

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellants' jurisdictional statement is not complete and correct. As required by 7th Cir. R. 28(b), Defendants-Appellees JB Pritzker, Latoya Hughes, Melvin Hinton, and William Puga provide this statement.

Plaintiffs filed a putative class action on behalf of mentally ill prisoners under the supervision of the Illinois Department of Corrections ("Department") against various Department officials, in their official capacities, pursuant to 42 U.S.C. § 1983, alleging violations of the Eighth and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794. Doc. 54.[1] The district court certified a class under Fed. R. Civ. P. 23(b)(2) consisting of all persons then or in the future in the Department's custody who were or should have been identified as requiring mental health treatment. Doc. 252. Plaintiffs later filed a third amended complaint for declaratory and injunctive relief, asserting a systemic failure to comply with federal law. Doc. 260. The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because plaintiffs' claims raised federal questions.

On May 23, 2016, the district court approved a comprehensive settlement agreement between plaintiffs and the Department's then-Acting Director and the Department's Chief of Mental Health Services, which was later determined to be a

[1] The district court's docket is cited as "Doc. __ at __"; this court's docket is cited as "7th Cir. Doc. __"; and plaintiffs' opening brief, short appendix, and supplemental appendix are cited as "AT Br. __," "A__," and "SSA__," respectively.

consent decree (the "agreement"). Docs. 710 (approval), 711-1 (agreement).[2] The district court stated that the matter would remain on its docket "to address issues of compliance and performance." Doc. 710.

In October 2017, plaintiffs moved to enforce the agreement, alleging that defendants were not complying with parts of it and that the asserted noncompliance also violated the Eighth Amendment and the ADA. Doc. 1559. In June 2018, plaintiffs moved for a permanent injunction, asserting the same alleged violations of the agreement and Eighth Amendment. Doc. 2112. The district court ruled that defendants had violated the agreement and acted with deliberate indifference to plaintiffs' serious mental health needs in violation of the Eighth Amendment, Doc. 2460, and entered a permanent injunction, Doc. 2516. Defendants appealed. Doc. 2583. On appeal, this court reversed the district court's judgment and vacated the permanent injunction. *See Rasho v. Jeffrey*, 22 F.4th 703 (7th Cir. 2022).

In the meantime, the district court extended the duration of its jurisdiction to enforce the agreement through July 22, 2022. Doc. 3508. On July 21, 2022, the district court denied plaintiffs' motion to extend the agreement further and allowed it to expire by its terms, Doc. 3597 at 7-9, but placed the case on its active docket for further proceedings. The following year, the court *sua sponte* asked the parties to address whether it had subject matter jurisdiction over the action. Doc. 3739 at 7. On October 23, 2023, the district court issued a final order dismissing this action

---

[2] Latoya Hughes, the Department's current Director, replaced Baldwin as a defendant. See Fed. R. Civ. P. 25(d).

with prejudice as to all claims that were embodied in the third amended complaint and resolved in the agreement (and awarding certain attorney fees under the agreement), and without prejudice as to any new claims asserted in the fifth amended complaint that was filed after the expiration of the agreement. Doc. 3745. The parties cross-appealed. *See* Doc. 3759 (plaintiffs' notice of appeal challenging judgment); Doc. 3747 (defendants' notice of appeal challenging fee award). On appeal, this court affirmed the district court's fee award, vacated the judgment, and remanded the case for a determination of whether the agreement mooted plaintiffs' claims. *See Daniels v. Hughes*, 147 F.4th 777, 787 (7th Cir. 2025).

On January 29, 2026, the district court dismissed plaintiffs' claims as moot, Doc. 3794, thereby disposing of all claims against all parties. On the same date, a Fed. R. Civ. P. 58 judgment order was entered on the district court's docket. Doc. 3795. On February 25, 2026, plaintiffs filed a timely Fed. R. Civ. P. 59(e) motion. Doc. 3798; *see* Fed. R. Civ. P. 59(b) (postjudgment motion must be filed within 28 days of judgment). On March 3, 2026, plaintiffs filed a motion to vacate the judgment under Fed. R. Civ. P. 60(b) without an accompanying memorandum of law. *See* Doc. 3800. On June 11, 2026, the court denied the Rule 59(e) motion on the merits and struck the Rule 60(b) motion with leave to refile it with a supporting memorandum. Doc. 3813.

On June 25, 2026, plaintiffs filed a notice of appeal, Doc. 3814, which was timely under 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(4)(A)(iv) because it was filed within 30 days of the district court's ruling on their postjudgment motion. On

July 2, 2026, plaintiffs filed a motion to vacate the judgment under Rule 60(b), Doc. 3819. The court deferred consideration of the Rule 60(b) motion pending the outcome of this appeal pursuant to Fed. R. Civ. P. 62.1(a) (authorizing district court to defer considering motion that it lacks authority to grant "because of an appeal that is docketed and is pending). This court therefore has jurisdiction over this appeal from the final judgment under 28 U.S.C. § 1291. This court does not, however, have jurisdiction over plaintiffs' Rule 60(b) motion, which remains pending in the district court.

## ISSUES PRESENTED FOR REVIEW

1. Whether the district court correctly dismissed this action with prejudice for lack of subject matter jurisdiction because the parties' agreement, by its plain terms, "resolve[d] the claims raised by this action," and thus mooted plaintiffs' claims.

2. Whether the district court correctly declined to consider extrinsic evidence in ruling that the agreement mooted plaintiffs' claims because the predicates required to consider that evidence were not met, and, in any case, the extrinsic evidence demonstrated that the parties intended for the agreement to resolve plaintiffs' claims.

## STATEMENT OF THE CASE

### Plaintiffs Filed a Class Action Complaint

Almost 20 years ago, Ashoor Rasho commenced this action *pro se* against Department officials challenging his mental health treatment. Doc. 1; *see Daniels*, 147 F.4th at 777. After the district court recruited *pro bono* counsel for Rasho, *see* 4/29/08 text order; Doc. 47, the case evolved into a class action, *see Daniels*, 147 F.4th at 777; Doc. 252.

Beginning in 2010, the parties commenced negotiations toward a settlement. *See generally* 3/17/10 text order; 9/15/10 text order; 10/29/10 text order; Doc. 132. To facilitate settlement, in May 2013, the parties negotiated an "interim" agreement, which the court entered as an agreed order. Doc. 132. Under that interim order, defendants agreed to implement certain changes to mental health treatment in advance of a settlement, and plaintiffs agreed to pursue judicial relief only to enforce the interim agreement while negotiations continued. *Id.* at 6-7. The interim agreement expressly stated that it was an "interim order," and contained no language indicating that it was intended to settle plaintiffs' claims. *See id.*

After two years of further negotiations, the parties decided to pause their attempts at negotiating a settlement and proceed with litigation. *See* 7/7/15 text order. In August 2015, the district court certified a litigation class under Fed. R. Civ. P. 23(b)(2) consisting of "[a]ll persons who are now or will be incarcerated in adult correctional facilities operated by the [Department] and who, while incarcerated, have a serious mental illness, defined as an Axis I disorder in the Diagnostic and Statistical Manual of Mental Disorder, Fourth Edition," except those with a diagnosis

of alcoholism, drug addiction, or any form of sexual disorder. Doc. 252 at 1-2. The following month, plaintiffs filed a third amended class action complaint, claiming under 42 U.S.C. § 1983 that alleged systemic deficiencies in mental health care violated their Eighth Amendment rights (counts 1-2) and deprived them of their liberty interests under the due process clause of the Fourteenth Amendment (count 3). *See* Doc. 260-1 at 15-19. Plaintiffs also asserted that the alleged deficiencies constituted violations of Title II of the Americans with Disabilities Act (count 4) and Section 504 of the Rehabilitation Act (count 5). *See id.* at 19-23.

The district court set the case for a trial to begin in January 2016. *See* Doc. 270.

**The Parties Reached an Agreement**

In December 2015, the parties informed the district court that they reached a proposed class action settlement and submitted their proposed agreement to the court. *See* Docs. 290, 346-1. At the outset, the parties agreed that they had "engaged in arms-length settlement negotiations to resolve the claims raised by this action as set forth in Plaintiffs' Third Amended Complaint." Doc. 346-1 at 2; *see also* Doc. 711-1 at 2 (SSA5) (same); Doc. 3051 at 8 (SSA40). The agreement set detailed requirements for numerous aspects of mental health care in the prison system, *see* Doc. 346-1 at 6-25; *see also* Doc. 711-1 at 6-25 (SSA9-28); Doc. 3051 at 11-26 (SSA43-58), and required defendants to hire a monitor to assess the Department's compliance with those requirements and prepare annual reports and status updates, Doc. 346 at 25-28; *see also* Doc. 711-1 at 25-28 (SSA28-31) (same); Doc. 3051 at 26-28

(SSA58-60) (same). In the agreement, the parties acknowledged that their "agreement for settling this litigation" was "fair, reasonable, and adequate to protect the interests of all parties." Doc. 346-1 at 2; *see also* Doc. 711-1 at 2 (SSA5) (same); Doc. 3051 at 8 (SSA40) (same).

The agreement also contained a multi-step "dispute resolution" procedure, *see* Doc. 711-1 at 29-30 (SSA 32-33), which, plaintiffs agreed, provided "mechanisms" to "enforce the terms of the Agreement," Doc. 682 at 3. Under that procedure, the parties first had to confer informally regarding any allegations of noncompliance and the appropriate response. Doc. 711-1 at 29 (SSA 32); Doc. 3051 at 29 (SSA61). If those efforts proved unsuccessful, at the second step, either party could "seek relief from the [district] Court to effect substantial compliance with the Settlement Agreement," but not through a petition for contempt. Doc. 711-1 at 29 (SSA32); Doc. 3051 at 29 (SSA61). If the parties' disagreement involved a "budget contingent" obligation, plaintiffs could ask the court "to return this case to the active docket" if the necessary legislative appropriations were not made within the agreement's timeframe. Doc. 711-1 at 29 (SSA32); Doc. 3051 at 29 (SSA61). For all other disagreements, the court, upon a finding that defendants were "not in substantial compliance" with any agreement provision, could enter an order (but not an order of contempt) that was "designed to achieve compliance," provided that the court also found that its relief was "narrowly drawn, extends no further than is necessary to correct the violation of the federal right, and is the least intrusive means for doing so," consistent with the Prison Litigation Reform Act ("PLRA"). Doc. 711-1 at 30

(SSA33); Doc. 3051 at 30 (SSA62); *see* 18 U.S.C. § 3626(a)(1)(A) (limiting court authority to issue prospective relief regarding prison conditions).

At the next step, if plaintiffs believed that defendants were not complying with a step-two enforcement order, they could "move for further relief from the [district] court to obtain compliance with the Court's prior order." *See* Doc. 711-1 at 30 (SSA33); Doc. 3051 at 30 (SSA62). At this final step, the court could "apply equitable principles" and "use any appropriate equitable or remedial power available to it," including by "returning the case to the active docket and setting a trial date." Doc. 711-1 at 30 (SSA33); Doc. 3051 at 30 (SSA62).

The agreement expressly limited the duration of the district court's jurisdiction to enforce the settlement. Doc. 711-1 at 29-30 (SSA32-33); Doc. 3051 at 29-30 (same). The agreement was set to terminate three years after the later of the "approval date" (May 23, 2016) or the "budget contingent approval date" (July 6, 2017) for any provision for which there was "no outstanding determination that Defendants are not in substantial compliance." Doc. 711-1 at 29-30 (SSA32-33). Regarding any provision for which the court had made a finding of no substantial compliance, the court could extend its jurisdiction to enforce that provision for up to two additional years after that finding was made. *Id.*

**The District Court Approved the Agreement**

The district court granted preliminary approval of the settlement under Fed. R. Civ. P. 23, entering a "preliminary determination that this is a fair, adequate and reasonable resolution of this action," and approving a plan for proposed class notice.

Doc. 290. After the three-month notice period, plaintiffs filed a "memorandum in support of approval of class action settlement," Doc. 682, which defendants did not oppose. In their submission, plaintiffs described the agreement as a "comprehensive" settlement that "addresses all of the claims in the Third Amended Complaint, including claims of inadequate mental health care and claims concerning the issues prisoners with mental illness face in segregation." *Id.* at 2.

In May 2016, the district court held a fairness hearing on the proposed agreement. *See* 5/13/16 text order; Doc. 3798-2. At the hearing, the court sought clarification regarding the "dispute resolution" provisions of the agreement. In response to that inquiry, plaintiffs' counsel advised the court that the agreement had "a variety of enforcement mechanisms," which would allow the parties "to return to court to enforce the various provisions" of the agreement. Doc. 3798-2 at 22 (SSA93); *see id.* at 57-58 (SSA128-29). The court then addressed its jurisdiction to enforce the agreement under the dispute resolution procedures. *See* Doc. 3798-2 at 87-89 (SSA158-60).

Citing *Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006), in which this court cautioned that courts cannot retain jurisdiction to enforce a settlement while also dismissing the settled case with prejudice, the district court also expressed concern about whether to dismiss the action upon approval of the settlement, and what effect that would have on its jurisdiction to enforce the agreement under the dispute resolution provisions. *See* Doc. 3798-2 at 87-89 (SSA158-60). In response to that inquiry, plaintiffs' counsel suggested that the agreement could be viewed as an

"interim order," while defendants' counsel clarified that the court would retain jurisdiction "in accordance with that one paragraph of the agreement." Doc. 3798-2 at 87-89 (SSA158-60). Ultimately, the court advised the parties that it would approve the agreement (subject to suggested modification not relevant here) but would not "dismiss the case either with prejudice or without prejudice," based on the parties' intention "for the Court to retain jurisdiction and address issues as they come up and, if necessary, down the road, put it back on the trial calendar." *Id.* at 124-25 (SSA 196-97).

Shortly after, the parties filed the agreement (as amended after the hearing). *See* Doc. 711- 1. On the same day, the court granted final approval, ruling that the agreement "is a fair, reasonable, and adequate resolution of the claims." Doc. 710 (SSA1). The court added that "in the interest of fairness to the class," it would "continue to provide a forum to address issues of compliance and performance of the terms of the Settlement." *Id.* The court further ordered: "[T]his matter will remain on the Court's docket until the terms of the Settlement Agreement are met. At that time, this matter will be dismissed with prejudice." *Id.*

**Plaintiffs Sought to Enforce the Agreement**

Over the following years, plaintiffs filed several motions to enforce the agreement's provisions. First, in October 2017, plaintiffs moved for a preliminary injunction "to enforce" the agreement, *see* Doc. 1559 at 11-30, which the district court granted, finding that defendants failed to achieve substantial compliance with

five parts of the agreement, which resulted in unconstitutional mental health treatment for the class, Doc. 2070 at 21-32.

Plaintiffs then moved to convert the preliminary injunction into a permanent injunction. Doc. 2112. In October 2018, the court granted their motion and entered a permanent injunction that incorporated terms of the agreement. Doc. 2460. Relevant here, the court concluded that under the agreement's dispute resolution provisions, it was authorized to exercise its equitable powers to enforce the requirements of the settlement by entering its injunction orders while leaving the agreement "intact." *Id.* at 8-9. In a subsequent addendum order, the court found that defendants had been deliberately indifferent to the class's serious medical needs, justifying permanent injunctive relief to enforce various provisions of the agreement. *See* Doc. 2516. As to those provisions, the court ordered that the permanent injunction would remain in effect "for a period of two years from the date of this Order." *Id.* at 14. A few months later, the district court entered a final permanent injunction order memorializing its prior injunction, along with certain post-judgment orders. Doc. 2633. The permanent injunction order stated that it would remain in effect for a two-year period "from the date of this Order," or until April 22, 2021. *Id.* at 61. Defendants appealed the judgment. *See Rasho*, 22 F.4th at 705.

While the *Rasho* appeal was pending, plaintiffs filed additional enforcement motions, including multiple contempt motions for alleged noncompliance with the *Rasho* injunctions, *see* Docs. 2790, 3078-79, 3176, which the district court stayed pending the resolution of the appeal, *see* Doc. 3284 at 2, and ultimately denied as

moot, Doc. 3597 at 9-10. Plaintiffs also moved for a preliminary injunction alleging noncompliance with the agreement at four Department prisons, *see* Doc. 3288, which plaintiffs later withdrew, see Doc. 3342. Two months later, plaintiffs again moved for a preliminary injunction, this time alleging noncompliance with the agreement at two Department prisons, *see* Doc. 3417, which the court denied, *see* Doc. 3581.

**The Parties Modified the Agreement**

In May 2020, while the *Rasho* appeal was pending, the parties modified certain terms of the agreement and jointly moved for court approval, as provided in the agreement's "modification" provisions. *See* Doc. 3024 at 1-2; *see also* Doc. 3024-1 at 25. The amended agreement included six substantive amendments, *see* Doc. 3024 at 1-2, which were "aimed at achieving higher quality care," Doc. 3034 at 1. It also amended the agreement's termination provision. *See* Doc. 3047-2 at 23 (SSA61). Specifically, the parties agreed that the court's jurisdiction over the case would terminate on April 23, 2021, for "any provision of this Settlement Agreement for which the court has found that Defendants are in substantial compliance." *Id.* For other provisions, the court could extend its jurisdiction over the agreement "for periods of time not more than two years from any finding of violation with respect to any provisions of this Settlement Agreement for which the Court has determined that Defendants are not in substantial compliance." *Id.* at 23-24 (SSA61-62). Lastly, for those provisions that were subject to the then-pending *Rasho* appeal, the court's jurisdiction would terminate "as provided in that [permanent injunction] order, unless otherwise altered by court order." *Id.* at 24 (SSA62).

Plaintiffs filed a memorandum in support of the joint motion to approve the amended agreement, arguing that approval of the amended agreement did not require class notice or a fairness hearing under Fed. R. Civ. P. 23 because the modified terms did "not prejudice any member of the plaintiff class," but instead "benefit[ted] the class." Doc. 3034 at 34-5. Agreeing with that analysis, *see* 5/28/20 text order, the district court approved the amended agreement, Doc. 3051.

In 2021, the district court again extended the duration of the agreement. *See* Docs. 3263, 3284. In early 2021, the parties submitted a "joint motion on jurisdiction," Doc. 3263 at 2, agreeing that defendants had achieved substantial compliance with respect to 71 provisions of the agreement — roughly 62 percent of the agreement's requirements — and thus sought to terminate the court's jurisdiction as to those provisions, s*ee* Doc. 3263-1. The parties also agreed that the monitor had not found defendants to be in substantial compliance with 45 settlement provisions and proposed an extension of the court's jurisdiction over those provisions. Doc. 3263-2. The court accepted the parties' proposal and entered an agreed order terminating its jurisdiction as to the 71 provisions where substantial compliance was not in dispute and extending its jurisdiction over the remaining 45 provisions, 41 of which the parties disputed substantial compliance and 4 of which were deemed necessary for continued monitoring, until April 22, 2022. Doc. 3266 at 2; *see* Doc. 3739 at 4. Separately, the court extended the duration of the 2019 permanent injunction order, which was set to expire on April 23, 2021, pending the resolution of the *Rasho* appeal. *See* Doc. 3284 at 3, 8-9.

**This Court Issued the *Rasho* Decision**

In January 2022, this court reversed the district court's injunction orders and vacated the permanent injunction. *Rasho*, 22 F.4th at 705. This court determined that the evidence did not support a finding that defendants were deliberately indifferent to the class's serious medical needs, as required to obtain relief under the agreement. *Id.* at 706-07. Instead, the court found that defendants had "clearly made progress in revamping [the Department's] mental-healthcare system" to cure deficiencies in the five identified areas and to alleviate staffing shortages. *Id.* at 707, 710. As this court explained, the evidence therefore established that defendants had "made reasonable efforts to cure the deficiencies in the areas identified in the plaintiffs' claim," and thus did not violate the Eighth Amendment, even if their efforts had fallen short of substantial compliance with the agreement. *Id.* at 710.

As an independent basis for reversal, this court also concluded that the permanent injunction exceeded the limits on remedial relief permitted by the PLRA. *Id.* at 711-12. Specifically, the permanent injunction order "imposed specific benchmarks lifted from the agreement without evidence that those plans matched the constitutional floor" of mental health treatment. *Id.* at 713. This court also clarified that the agreement was a consent decree, rather than a private settlement, because it provided for judicial enforcement of its terms instead of requiring the parties to address any violations of the agreement solely by "restarting the litigation on the merits." *Id.* at 707 n.2 (citing *Doe v. Cook Cnty.*, 798 F.3d 558, 562-63 (7th Cir. 2015)).

**The Parties Agreed to a Negotiation Plan**

The next day, plaintiffs moved in the district court for a finding of no substantial compliance on 40 of the agreement provisions and a two-year extension of the court's jurisdiction over those 40 provisions. Doc. 3484 at 2-3. While that motion was pending, the district court entered an unopposed order extending its jurisdiction over 44 of the agreement provisions through July 22, 2022, while also terminating its jurisdiction over one provision over which substantial compliance was not in dispute. Doc. 3508.

After further litigation as to plaintiffs' motion to extend the court's jurisdiction, but before the district court had definitively ruled on that motion, the parties agreed to undertake a "period of negotiation," lasting from June 1, 2022, until the agreement's July 2022 expiration date, to try to "chart an agreed path forward" and "resolve ongoing disputes regarding Plaintiffs' allegations that Defendants are not in substantial compliance with the [agreement]." Doc. 3580 at 1 (SSA66). The stated goal of the "negotiation plan" was to resolve the parties' outstanding issues "through a new consent decree and/or private settlement agreement consistent with the requirements of the [PLRA]." *Id.* The parties agreed that during their negotiation period, "all aspects of the current Settlement Agreement," including the district court's jurisdiction and plaintiffs' then-ongoing monitoring, would "continue as currently scheduled" and proposed that the district court should rule on plaintiffs' then-pending preliminary injunction motion to enforce the agreement at its discretion, but not rule on plaintiffs' motion to extend the agreement, which would

remain pending and unresolved during the agreed negotiation period. *Id.* at 2 (SSA67). Under the plan, the parties also agreed that if they did not reach an agreement by July 22, 2022, the "matter will be returned to the active trial docket" for further proceedings. *Id.* The court adopted the negotiation plan and directed the parties to "inform the Court about the outcome of their negotiations" by July 22, 2022. 6/2/22 text order.

On July 20, 2022, the parties informed the district court that they had "come to the conclusion that they will not be able to extend the negotiation term and are at an impasse." 7/20/22 text order. The next day, the district court denied plaintiffs' motion to extend its jurisdiction over the consent decree. Doc. 3597 at 12. The court explained that it could not modify the agreement or extend its term because plaintiffs failed to show any lack of compliance with the agreement's terms necessary to obtain such an order. *Id.* at 5-9. As an alternative ground for its ruling, the court decided that it would decline to exercise its discretionary power to extend its jurisdiction because this court had already determined that defendants were not deliberately indifferent to plaintiffs' serious mental health needs. *Id.* at 9. In its order, the district court stated that the case "is returned to the active docket for scheduling." *Id.* at 12; *see* Doc. 3681 at 3.

**After Further Litigation, the District Court Dismissed the Action for Lack of Subject Matter Jurisdiction**

Following the expiration of the agreement, the parties continued to litigate this action. In September 2022, about two months after the agreement expired, plaintiffs filed a fourth amended complaint, adding the Governor as a defendant and

asserting new claims under the Fourteenth Amendment. Doc. 3641. Defendants moved to dismiss the complaint in part, which the district court granted in part. Doc. 3681. In May 2023, plaintiffs filed a fifth amended complaint, Doc. 3703, which defendants again moved to dismiss in part, Doc. 3617. A few months later, plaintiffs moved for a preliminary injunction based on alleged conditions at one Department facility. *See* Doc. 3723. Defendants opposed the motion, Doc.3726, and the court set the matter for an evidentiary hearing, *see* 8/21/23 text order.

While these matters were ongoing, the district court *sua sponte* raised "concerns relating to jurisdiction and standing" regarding the action. Doc. 3739 at 1. After considering jurisdictional memoranda filed by the parties, *see* Doc. 3741 (plaintiffs); Doc. 3742 (defendants), the court entered a final judgment dismissing this action with prejudice as to all claims embodied in the agreement and without prejudice as to any new claims asserted in the fifth amended complaint, Doc. 3745. The court concluded that because the parties' agreement was a consent decree, it finally and conclusively resolved all plaintiffs' claims, leaving only post-judgment issues of enforcement to the district court. *Id.* at 9. The court further concluded that under the agreement's terms, its enforcement jurisdiction ended, at the latest, on July 22, 2022, when the last agreement to extend its jurisdiction expired with no findings of an outstanding federal rights violation. *Id.* at 13-14.

Plaintiffs moved to vacate the judgment under Fed. R. Civ. P. 59(e), arguing that the district court made "fundamental mistakes of fact and law" when it miscalculated the agreement's termination date and thus incorrectly concluded that

it acted without jurisdiction when it extended its jurisdiction to enforce the agreement. Doc. 3750 at 2. The court denied the motion, concluding that any error of fact did not alter its determination that the agreement, by its terms, ended on July 22, 2022, after the court issued its July 21, 2022 order denying plaintiffs' request to further extend it. Doc. 3755 at 5-6.

Plaintiffs subsequently filed a "renewed motion under Rule 59(e)," Doc. 3756, which the district court construed as a Rule 60(b)(6) motion, Doc. 3764, at 2. In that motion, plaintiffs argued that the parties' "negotiation plan" reflected an agreement "that the consent decree be ended," which the court approved effective July 21, 2022. Doc. 3756 at 1. The court denied the motion, explaining: "the Court did not 'terminate' the Consent Decree in the July 21, 2022 Order. Instead, the Court explained that it declined to extend its jurisdiction and noted that no party had terminated the Consent Decree." Doc. 3764 at 4. As a result, the court added, the agreement "remained intact before it expired by its terms." *Id.* at 4-6. Plaintiffs appealed the judgment. *See Daniels*, 147 F.4th 777.

**This Court Vacated the Judgment and Remanded with Instructions**

In August 2025, this court reversed the district court's dismissal of this action for lack of subject matter jurisdiction and remanded with instructions for further proceedings. *Daniels*, 147 F.4th at 785-87. While recognizing that a "binding settlement agreement generally moots a case," this court explained that the district court's continuing jurisdiction over this case turned on whether the agreement "moots some or all of the plaintiffs' claim related to the adequacy of mental

healthcare provided to persons in [Department] custody." *Id.* at 786. This court further explained that its "prior characterization of [the] settlement agreement as a 'consent decree'" was not dispositive of the jurisdictional question and instructed the district court on remand to apply "principles of contract interpretation" to resolve the question of whether the parties intended to waive their rights to litigate the underlying claims by entering into the agreement. *Id.* at 787. Additionally, this court observed that if the district court ruled that the parties had intended to waive their right to litigate their claims, that would "not necessarily resolve the mootness issue" if the parties also "agreed to modify or rescind the settlement agreement when they agreed to return this case to the district court's 'active trial docket.'" *Id.* In that circumstance, this court opined, the parties and the district court may consider a request for Fed. R. Civ. P. 60(b)(6) relief as an avenue for litigating the underlying claims. *Id.*

**Proceedings on Remand**

After the mandate was issued, Doc. 3785, the parties jointly proposed to submit briefs addressing whether plaintiffs' claims were moot, *see* Doc. 3786. In their submission, defendants argued that the agreement contained an express agreement to "resolve all claims raised by the action" and thus demonstrated the parties' intent to waive their claims, obviating the need to resort to extrinsic evidence of intent. Doc. 3788 at 24-33. Plaintiffs responded, arguing that the agreement did not moot their claims because the district court did not find that the terms of the

agreement were met, which permitted the court to return the case to its active docket. *See* Doc. 3791 at 11-28.

The district court entered judgment dismissing plaintiffs' action, concluding that by its plain language, the agreement finally and fully settled all claims embodied in plaintiffs' then-pending third amended complaint, such that all plaintiffs' claims were moot. Doc. 3794 at 8-10 (A8-10). The court first observed that the agreement provided:

> Without conceding any infirmity in their claims or defenses, after extensive discovery, the parties have engaged in arms length negotiations to resolve the claims raised by this action, as set forth in Plaintiffs' Third Amended Complaint. Plaintiffs and Defendants have reached an agreement for settling this litigation that the parties believe is fair, reasonable, and adequate to protect the interests of all parties. The Parties believe that this Settlement Agreement will benefit mentally ill offenders who are confined to correctional facilities under Defendants' control.

*Id.* at 3 (A3) (quoting Doc. 346-1 at 2 and noting that "exact same language appeared in subsequently filed versions" of agreement). The court concluded that Illinois law, which governed the interpretation of the agreement, barred consideration of extrinsic evidence regarding the intent of the parties because this language unambiguously showed that the parties "intend[ed] to settle this case in full when they each signed, and the Court approved, their Agreement." *Id.* at 9-10 (A9-10). The court also concluded that this language released plaintiffs' claims and that no further was necessary to effectuate a release under Illinois law. *Id.* at 9 (A9). The court concluded that "[t]he plain and ordinary meaning of that language is that the parties

were settling this action in its entirety, and that agreement to settle became effective immediately on the date the Court approved it." *Id.* at 8-9 (A8-9).

The court further found that the parties did not agree to modify the agreement when they proposed the 2022 negotiation plan because they never reached mutual assent or agreement to any proposed modification. *Id.* at 10-13 (A10-13). Accordingly, the court determined that plaintiffs' claims, including those later asserted in the fifth amended complaint, were moot. *Id.* at 10 (A10). The court observed that plaintiffs are not "without recourse," observing that a group of plaintiffs, including some of the named plaintiffs in this action, who are represented by some of the same plaintiffs' counsel in this action, brought a new putative class action lawsuit "complaining of the same types of injury as in the Plaintiffs' Fifth Amended Class Action Complaint here, and seeking much the same relief as the Plaintiffs did and do here." *Id.* at 13 (A13); *see Hilliard v. Hughes*, No. 1:25-cv-04117 (N.D. Ill Apr. 16, 2025). The court also noted that plaintiffs could pursue relief under Fed. R. Civ. P. 60(b)(6) as "an avenue for litigating the underlying, currently moot claims in this litigation." *Id.*

Plaintiffs then timely moved to vacate the judgment under Fed. R. Civ. P. 59(e), arguing that the district court failed to consider that during the Fed. R. Civ. P. 23 class settlement approval process, the court made clear that the settlement was "a plan to resolve the case, not an agreement that the case had been resolved." Doc. 3798 at 4. Plaintiffs contended that it would be a "manifest injustice" to let the judgment stand, despite the court's recognition at that stage that the case could

return to trial if promised changes to mental health care were not implemented. *Id.* at 11. Plaintiffs further argued that the judgment improperly reversed multiple previous orders that the court should have treated as law of the case, including the May 2016 approval order, the June 2020 approval of the amended agreement, and the June 2022 order adopting the negotiation plan. *Id.* at 13-18.

A few days later, plaintiffs filed a motion for relief from the judgment under Fed. R. Civ. P. 60(b)(6), arguing that the parties mutually rescinded the agreement in June 2022, when they agreed to negotiate toward a new agreement and because, in plaintiffs' view, defendants repudiated the agreement by failing to comply with 41 of its provisions, as well as under Rule 60(b)(1), (4), and (5). *See* Doc. 3800 at 3-8. Plaintiffs did not include a memorandum of law in support of that motion but instead asked the court to defer briefing on its Rule 60(b) motion until after resolution of its Rule 59(e) motion. *Id.* at 1-2.

Defendants opposed plaintiffs' Rule 59(e) motion, arguing that plaintiffs rehashed arguments that were or could have been made before the judgment was entered. Doc. 3801 at 5-6. On the merits of plaintiffs' arguments, defendants argued that plaintiffs did not show a basis for relying on extrinsic evidence and, even if the court were to consider extrinsic evidence of the parties' intent, the record of the settlement approval process confirmed that the parties intended that the court would dismiss the case with prejudice as the ultimate result of the settlement, once its jurisdiction to enforce the agreement had expired. *Id.* at 8-11. Lastly, defendants argued that the court's judgment order did not implicate the "law of the case"

doctrine because the court did not "reverse" any prior orders in the case, but instead merely followed the mandate by analyzing the agreement and record to determine that the parties intended to resolve plaintiffs' claims effective upon final approval of the agreement. *Id.* at 11-13. Separately, defendants also moved to strike the Rule 60(b) motion for failure to comply with the court's local rules. *See* Doc. 3804.

The district court denied the motion to vacate, finding that plaintiffs were not entitled to relief because their motion "merely rehash[ed] their arguments as to the significance of the Approval Order when considered together with the Settlement Agreement." Doc. 3813 at 6 (A23). The court further found that plaintiffs could not rely on the fairness hearing transcript or notice of proposed settlement because they neither cited nor discussed those items in their brief supporting jurisdiction and thus raised those issue "too late." *Id.* at 6-7 (A23-24). The court further explained that, in any case, the parties' proposed Rule 23(e) approval order "signaled to the Court that their agreement was, in fact, for the Court to dismiss this case with prejudice as the ultimate result of their Settlement Agreement." *Id.* The court then struck plaintiffs' Rule 60(b) motion "in the interests of efficiency and clarity" and instructed plaintiffs to refile their motion so that a briefing schedule could be set without "a gap in docket filings" between the motion and its as-yet-unfiled supporting memorandum. *Id.* at 15-16 (A32-33).

Plaintiffs appealed. Doc. 3814.

## SUMMARY OF ARGUMENT

The district court properly dismissed this action because plaintiffs' claims became moot upon the court's approval of the parties' agreement. The agreement expressly acknowledged that the parties "engaged in arms length settlement negotiations to resolve the claims raised by this action" and "reached an agreement for settling this litigation." This provision unambiguously expressed the parties' intent to "resolve" plaintiff's claims in exchange for the comprehensive reforms to prison mental healthcare delivery that defendants agreed to make. The agreement's dispute resolution provisions further demonstrate that the parties did not intend to preserve plaintiffs' claims, but to provide time-limited court jurisdiction to address any allegations of noncompliance with the agreement's terms. Because the agreement's terms plainly express the parties' intent to settle this action, the district court correctly concluded that plaintiffs' claims became moot pursuant to the agreement.

Because the settlement language was unambiguous, Illinois law precludes the consideration of extrinsic evidence of intent, and plaintiffs may not rewrite the agreement's terms based on extrinsic evidence. Regardless, their proffered documents — the class notice, fairness hearing transcript, and final class settlement approval — reinforce that the agreement mooted their claims. Specifically, the parties and the court undertook the Rule 23 approval process *because* the settlement constituted a final resolution of plaintiffs' claims. Further, the record shows that the court opted not to dismiss the action when it approved the settlement so that it could

retain jurisdiction for a limited period to enforce the agreement, consistent with this court's admonitions in *Shapo*, not because plaintiffs' claims remained unresolved. The judgment dismissing plaintiffs' claims as moot should be affirmed.

## ARGUMENT

### I. The district court complied with this court's mandate.

As a threshold matter, this court should reject plaintiffs' argument that the district court failed to comply with the *Daniels* mandate. Plaintiffs maintain that the district court erred in two respects: (1) by improperly "limit[ing] its analysis" of mootness "to a few phrases in the Agreement" when, plaintiffs contend, this court deemed that language "not dispositive" of the parties' intent, AT Br. 10-11, and (2) by not considering the issues pertaining to their request for relief under Fed. R. Civ. P. 60(b*), id*. at 45-48. They are incorrect on both counts.

Contrary to plaintiffs' contention, *id.*, this court did *not* find that the agreement's language "was not determinative" of whether plaintiffs' waived the right to litigate their claims in the agreement, *see Daniels*, 147 F.4th at 786. In fact, this court did not interpret the agreement's terms, let alone conclude that those terms were ambiguous. Instead, it faulted the district court for basing its mootness analysis on this court's prior characterization of the agreement as a consent decree under the PLRA, rather than on principles of contract law, because that designation was "not dispositive of whether the parties . . . waived their right to litigate the underlying claim." *Id.* at 787. This court then explained that because an analysis of the agreement had not been undertaken, it was "unsure" whether the agreement "moot[ed] some or all of the plaintiffs' claims." *Id.*

This court therefore remanded the case so the district court could "resolve *in the first instance*" whether the agreement "contains a waiver of the parties' right to litigate the underlying claims (or otherwise moots the claims)," and instructed the

district court to determine "with the benefit of adversarial presentation" whether the agreement "contains a waiver of the parties' right to litigate the underlying claims (or otherwise moots the claims)." *Id.* (emphasis added).

On remand, the district court followed "the spirit as well as the letter of the mandate." *In re A.F. Moore & Assocs.*, 974 F.3d 836, 840 (7th Cir. 2020). Based on the parties' joint proposal, *see* Doc. 3786, the court ordered briefing to assist its resolution of the issues on remand, *see* 9/26/25 text order. And consistent with the mandate, the court reviewed *Daniels*, the procedural history of this case, the language of the settlement agreement, and the relevant Illinois law on contract interpretation. *See* Doc. 3794 at 1-10 (A1-10). After considering the relevant law and facts, the court concluded that "the plain and ordinary meaning of" the agreement's language unambiguously demonstrated that "the parties were settling this action in its entirety, and that agreement to settle became effective immediately on the date the Court approved it," and that Illinois law precluded it from considering extrinsic evidence of intent under such circumstances. *Id.* at 8-9 (A8-9). The court further found that despite negotiating toward a new agreement pursuant to the "negotiation plan," the parties never reached mutual assent, as necessary to modify or rescind the agreement under Illinois law. *Id.* at 10-13 (A10-13). The district court fulfilled this court's mandate when it conducted the analysis this court directed it to conduct and entered the judgment. *See Daniels*, 147 F.4th at 787.

Plaintiffs are also wrong to suggest that the district court "failed to follow this Court's remand order" when it "dismissed the case without considering argument for

relief under Rule 60." AT Br. 45. To be sure, this court suggested that if the district court found that the agreement mooted plaintiffs' claims, it could still consider whether the parties "agreed to modify or rescind the settlement agreement when they agreed to return this case to the district court's active trial docket," and if so, whether relief from the judgment under Rule 60(b)(6) is appropriate. *Daniels*, 147 F.4th at 787 (cleaned up). However, plaintiffs incorrectly assert that the district court prevented them from litigating that issue. *See* AT Br. 46. Rather, the parties agreed that the Rule 60(b)(6) issue would be litigated only after the district court had resolved the mootness issue. *See* Doc. 3786 at 1. Plaintiffs then filed a Rule 60(b) motion. *See* Doc. 3813 at 14-15 (A31-32). After the district court struck that motion with leave to refile, *id.*, plaintiffs filed a notice of appeal challenging the judgment and ruling on their Rule 59(e) motion, Doc. 3814, before they filed their renewed Rule 60(b) motion, Doc. 3819. Because of plaintiffs' decision to appeal without filing the renewed Rule 60(b) motion, the district court was divested of jurisdiction to consider plaintiffs' post-appeal motion. *See* Doc. 3823 (deferring consideration of plaintiffs' Rule 60(b) motion pursuant to Fed. R. Civ. P. 62.1(a)(1) because plaintiffs' appeal divested it of jurisdiction). In other words, plaintiffs' litigation decision, and not any failure by the district court to comply with the mandate, is the only reason any arguments they sought to bring under Rule 60(b) have not already been considered on the merits.

## II. This court should affirm the judgment because plaintiffs' claims became moot when the district court approved the parties' settlement.

As the district court concluded, the agreement, by its plain terms, unambiguously resolved this litigation. Doc. 3794 at 16 (A16). Under Illinois law, the court was precluded from considering extrinsic evidence of intent derived from the negotiation or approval of the agreement. Even so, extrinsic evidence, including the course of the litigation and the settlement approval process, demonstrates that the parties intended that the agreement, once approved, would resolve plaintiffs' claims. The agreement therefore mooted plaintiffs' claims, which should have been dismissed with prejudice when the court's jurisdiction terminated in July 2022.

### A. By its plain language, the agreement fully resolved plaintiffs' claims.

As this court has recognized, a "binding settlement agreement generally moots a case" by resolving "all claims against the parties," but the contours of any specific settlement turns on the specific agreement between the parties. *Daniels*, 147 F.4th at 785 (citing *Selcke v. New England Ins. Co.*, 2 F.3d 790, 791-92 (7th Cir. 1993)). This court reviews the district court's decision interpreting the agreement *de novo, id.* at 784, but any ancillary factual findings related to the agreement's terms are reviewed for clear error, *see McCoy v. Chi. Heights Election Comm'n*, 880 F.3d 411, 414 (7th Cir. 2018).

The agreement is governed by Illinois law, *Daniels*, 147 F.4th at 784, which provides that settlement agreements are governed by the same rules of construction that apply to all other contracts, *Haisma v. Edgar*, 218 Ill. App. 3d 78, 87 (1st Dist.

1991). Under those principles, the court's primary objective in construing a contract is "to give effect to the intent of the parties." *Gallagher v. Lenhart*, 226 Ill. 2d 208, 219 (2007). Initially, the court must "look to the language of the contract alone," for that language "given its plain and ordinary meaning," provides "the best indication of the parties' intent." *Id.* at 233. If the contract language is clear and unambiguous, the parties' intent must be discerned from the contract's plain language, without resort to extrinsic evidence outside the "four corners" of the document. *Clanton v. Oakbrook Healthcare Ctr. Ltd.*, 2023 IL 129067, ¶ 30; *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011).

Contract language will not be deemed ambiguous simply because the parties disagree on the meaning of a contractual provision. *In re Estate of Holms*, 2019 Ill. App. (2d) 190139, ¶ 19. Rather, an ambiguity exists only if the contract's terms are "susceptible to more than one reasonable meaning." *Ill. State Bar Ass'n Mut. Ins. Co. v. Brooks, Adams & Tarulis*, 2014 IL App (1st) 132608, ¶ 27; *see Thompson*, 241 Ill. 2d at 441. When determining whether an ambiguity exists, the court should not read any contract provision in isolation but instead should consider "the whole contract," *Clanton*, 2023 IL 129067, ¶ 30, "adopting the most natural and reasonable reading of [it]," *Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*, 762 F.3d 673, 679 (7th Cir. 2014) (applying Illinois law). The contract also should not be interpreted "in a way that would nullify its provisions or render them meaningless." *Vision Energy, LLC v. Smith*, 2025 IL App (3d) 240114, ¶ 54. And, when contract terms are unambiguous, the court must apply the contractual

language as written, not "by the construction placed upon it by the parties." *Clanton*, 2023 IL 129067, at ¶ 30.

Here, the plain language of the agreement explicitly states the parties' intent to settle, and thus extinguish, plaintiffs' claims. The agreement states that the parties, through arm's length negotiations, "reached an agreement for settling this litigation" and agreed to "resolve the claims raised by this action as set forth in Plaintiffs' Third Amended Complaint." Doc. 711-1 at 2 (SSA 5); Doc. 3051 at 2 (SSA40). The plain and ordinary meaning of those terms of the parties' agreement to "settl[e]" and "resolve" the claims expresses finality, demonstrating that the parties intended to reach a final resolution of this litigation and plaintiffs' claims. *See Bernstein v. Bankert*, 733 F.3d 190, 211 (7th Cir. 2011) ("An issue which is resolved is an issue which is decided, determined, or settled — finished with no need to revisit"); *see also Black's Law Dictionary* (12th Ed. 2024) ("settle" means "to end or resolve" or "to bring to a conclusion (what has been disputed or uncertain)").

Further, by the plain terms of the agreement, the resolution of plaintiffs' claims became immediately effective upon the district court's final approval of the agreement. *See* Doc. 711-1 at 32 (SSA35). Indeed, the agreement provided that unless specifically indicated, all terms of the agreement "shall commence upon the date of approval by the Court."; Doc. 3047-2 at 26 (SSA64) (same).

Confirming their intent to "resolve the claims raised by this action," the parties titled their agreement as a "settlement agreement" and consistently referred to it as a "settlement agreement" before the district court. *See Chi. Inv. Corp. v.*

*Dolins*, 107 Ill. 2d 120, 128-29 (1985) (title of an agreement is evidence of the purpose of the agreement); *see also* Doc. 346-1 (proposing "*Settlement* Agreement" for court approval); Doc. 711-1 (final approval for "Amended *Settlement* Agreement"); Doc. 3047-2 (approval of "Corrected Second Amended *Settlement* Agreement"**)** (all emphasis added). In fact, the term "settlement agreement" appears nearly 100 times in the agreement. *See* Docs. 711-1, 3051.

The agreement was also binding on both plaintiffs and defendants, thus conforming to the general rule that "a binding settlement agreement" generally moots the parties' claims. *See Daniels*, 147 F.4th at 785. Under its terms, defendants undertook binding obligations concerning the delivery of mental health treatment at Department prisons, *see* Doc. 711-1 at 6-31 (SSA9-31); *Rasho,* 22 F.4th at 707. And while defendants could seek modifications to the agreement beginning six months after it took effect, they could do so only with the agreement of plaintiffs' counsel or by obtaining an order from the court. *See* Doc. 3051 at 30-31 (SSA33-34).

For their part, plaintiffs both relinquished their claims through the above-quoted language and agreed that any disputes regarding defendants' performance of the agreement would be addressed through the agreement's "dispute resolution" procedures. *See* Doc. 711-1 at 29-30 (SSA32-33); Doc. 3051 at 23-24 (SSA61-62). Under those procedures, if plaintiffs believed that defendants were not in substantial compliance with any term of the agreement, they could seek a court order (other than a contempt order) designed to "effect substantial compliance with the Settlement Agreement" during the duration of the agreement. Doc. 3051 at 23 (SSA61). The

agreement also permitted plaintiffs to seek to abrogate it three years after the later of the approval date or budget contingent approval date, except that they would remain bound by certain provisions of its dispute resolution procedures, along with the attorney fees provision. *Id.* at 30 (SSA33). By limiting plaintiffs' recourse to seeking relief for alleged violations of the agreement, rather than permitting them to seek to litigate their claims, these provisions demonstrate that the parties intended the agreement to bind both parties to a settlement that "resolve[d] the claims raised by [plaintiffs'] action." *Id.* at 2 (SSA40).

### B. The parties treated the agreement as a final resolution of the action.

Because the agreement's plain language unambiguously confirms that the parties negotiated a "settlement" to "resolve" the case, the district court properly interpreted the agreement without resort to extrinsic evidence of the parties' intent. *See* Doc. 3794 at 8-9 (A8-9); *see also Clanton*, 2023 IL 129067, ¶ 33; *Air Safety, Inc. v. Tchrs. Realty Corp.*, 185 Ill. 2d 457, 462-63 (1999). Even so, the extrinsic evidence in the form of the parties' conduct confirms that they intended to "resolve the claims raised by this action" and reached "an agreement for settling this litigation." Doc. 711-1 at 2.

For example, the district court undertook a Fed. R. Civ. P. 23(e) class settlement approval process, including preliminary approval, a class notice period, a fairness hearing, and final approval, demonstrating that the court and parties viewed the settlement to be a final, class-wide resolution of the action, rather than a mere "pathway to resolve the claims," as plaintiffs contend. AT Br. 12. The Rule 23(e)

approval procedures apply only if a certified class's "claims, issues, or defenses" are to be "settled, voluntarily dismissed, or compromised." Fed. R. Civ. P. 23(e). In other words, if the parties had not intended to "settle" their claims but instead expected that they could have them returned to the court's docket for trial, the parties would have had no reason to undertake the approval process. *See id.* By contrast, when the court approved the 2013 "interim order," the court approved the agreement as an "agreed order" without undertaking the approval process because that order, unlike the settlement agreement, was not intended to be a final resolution of plaintiffs' claims. *See* Doc. 132; see also 4/18/13 text order (referencing "proposed agreed order"); 5/8/13 text order (same).

Further highlighting the finality of the agreement, the district court issued a final approval order, expressly stating that the "the proposed settlement is a fair, reasonable, and adequate resolution of the claims." Doc. 710 (SSA1). But because it retained jurisdiction to enforce the agreement for a limited period, the court added that it would "continue to provide a forum to address issues on compliance and performance of the terms of the Settlement," keeping the case on its "docket until the terms of the Settlement Agreement are met," at which time "the matter will be dismissed with prejudice." *Id.* As the district court put it, when plaintiffs submitted this language to the court for its approval, they "signaled to the court that their agreement was, in fact, for the court to dismiss this case with prejudice as a result of the Settlement Agreement." Doc. 3813 at 6 (A23).

Further, after the district court approved the agreement, plaintiffs petitioned for fees and costs "pursuant to 42 U.S.C. § 1988," which permits an "award of reasonable attorneys' fees to prevailing parties in civil rights cases, including actions successfully resolved under 42 U.S.C. § 1983." At the time, plaintiffs argued that the "Settlement Agreement unquestionably brings a material alteration in the legal relationship of the parties," and that they achieved "[n]early every itemized request for relief in [Plaintiffs'] Complaint" through the agreement. *Id.* at 4-5 (cleaned up). Plaintiffs' fee petition thus reflected their own understanding that the settlement "resolved" their claims and this litigation.

### C. Plaintiffs' arguments against finality are at odds with the plain terms of the agreement and the proceedings.

Plaintiffs make no effort to address the plain terms of the agreement, which clearly state the parties' intent "to resolve the claims" and their "agreement for settling this litigation." Doc. 711-1 at 2 (SSA5); *see* AT Br. 26-49. Instead, citing *Selcke*, 2 F.3d 790, plaintiffs contend that the agreement did not moot their claims because the settlement could become final only if the district court made findings that the agreement's terms were met. AT Br. 27-28.

But plaintiffs' reliance on *Selcke* is misplaced. There, after losing an appeal on a breach of contract claim, a bankruptcy receiver moved to vacate the judgment and withdraw the decision, arguing that the claim became moot while pending on appeal pursuant to a settlement agreement. 2 F.3d at 791. Rejecting this argument, this court explained that "by its terms," the parties' settlement would not become final until a cash payment was made, and there was no evidence that had occurred before

the court decided the appeal. *Id.* at 792. This court thus concluded that, with no evidence that the condition precedent had been satisfied at the time, the appeal was not moot when the court decided it. *Selcke* thus stands for the principle that the underlying case does not become moot "until the settlement becomes final." *Id.* at 792. That principle does not further plaintiffs' arguments because "by its terms," the agreement here became final in May 2016 when the district court entered the final approval order. *See* Doc. 711-1 at 32 (SSA 35) ("The Settlement Agreement is not effective absent approval by the Court"); *see* Doc. 710 (approving settlement). At that time, the agreement mooted plaintiffs' claims.

#### 1. The district court's equitable power to return the case to its active docket did not render the settlement nonfinal.

Plaintiffs also contend that the agreement did not resolve this case because the agreement "reserved the court's power to order a return to the trial call on the underlying claims to address persistent non-compliance with its terms." AT Br. 30-32. According to plaintiffs, "[i]f the Agreement rendered Plaintiffs' claims moot in exchange for a future promise to perform, the Dispute Resolution language would be contradictory and meaningless." *Id.* at 31. But plaintiffs misconstrue the agreement and applicable law.

Under the agreement's dispute resolution provisions, plaintiffs could seek to have the case returned to the district court's "active docket" only under two circumstances, neither of which occurred here: if (1) defendants failed to meet the decree's "budget contingent" term, Doc. 3051 at 29 (SSA61), plaintiffs could, after engaging in the informal negotiation process, request that the court to return ths

case to the active docket if a necessary appropriation was not made within the time limit; or if (2) at the final step of the dispute resolution procedures, the court found that defendants failed to comply with an order that it had entered under the preceding step after finding that defendants were not in substantial compliance with the agreement, plaintiffs could ask the court to "use any appropriate equitable or remedial powers available to it," including returning the case to the active docket. Doc. 711-1 at 30) (SSA62). But contrary to plaintiffs' argument, nothing in the dispute resolution provisions suggests "that the ultimate issues in the case remained alive until the court found that the terms of the agreement had been met." AT Br. 31-32.

On the contrary, the district court's equitable power to enforce the settlement, including through rescission or *vacatur*, undermines plaintiffs' argument that the "case remained alive." *Id.* By providing that the court could enter an equitable remedy for failure to comply with an enforcement order, the parties acknowledged that the settlement agreement was a binding resolution of their claims, which would have to be rescinded or vacated by a court order. *See* Doc. 711-1 at 29-30 (SSA 32-33); *see also Newton v. Aitken*, 260 Ill. App. 3d 717, 719 (2d Dist. 1994) (rescission, an equitable remedy, "refers to cancellation" of a binding contract, which may be appropriate if one party fails to perform). Conversely, if the agreement were not a binding resolution of plaintiffs' action, there would have been no need to negotiate a provision that allowed plaintiffs to seek equitable recission or *vacatur* under specified circumstances.

Plaintiffs also point to language in the agreement providing that "the evidence at trial could include testimony [of the Monitor] to 'address the ultimate issues in this case.'" AT Br. 31 (quoting Doc. 3047-2 at 30 (SSA33)). According to plaintiffs, this language "embodied the parties' intent that the court retained the power to return the case to trial on the underlying claims of unconstitutional care if disputes about performance could not be resolved." *Id.* But that language does not expand the narrow circumstances described in the agreement under which the case may be returned to the active docket. Rather, it echoes Fed. R. Evid. 704(a), which provides that an expert opinion can "embrace an ultimate issue." In other words, the parties agreed that the Monitor's testimony would be treated like an expert's testimony when it came to "ultimate issues" in a proceeding on whether defendants complied with a prior enforcement order. *See* Doc. 3047-2 at 3 (SSA33); *see also United States v. Brown*, 871 F.3d 532, 539 (7th Cir. 2017) (citing Fed. R. Evid. 704(a)) ("[e]xpert opinions on ultimate issues are not categorically impermissible"). This language therefore simply addressed an evidentiary issue that might have otherwise arisen in an enforcement action. It does not suggest that the agreement did not resolve this litigation.

**2. The agreement released plaintiffs' claims.**

Plaintiffs next contend that the agreement did not moot their claims because it did not contain an express waiver provision. AT Br. 33. But plaintiffs do not identify any cases holding that a settlement agreement must contain specific words or clauses to resolve litigation. *See id.* at 33-35. Nor do their cited authorities support such a

requirement. *See U.S. Bancorp Mortg. v. Bonner Mail P'ship*, 513 U.S. 18, 24 (1994) (mootness resulting from voluntary settlement of claims did not warrant *vacatur* of appellate court decision on underlying claims); *Malek v. Chuhak & Tescon, P.C.*, 2023 IL App (1st) 220732, ¶¶ 20-22 (interpreting "covenant not to sue" provision as containing release of claims); *Pate v. City of Sesser*, 75 Ill. App. 3d 233, 236-37 (5th Dist. 1979) (recognizing that "scope of the release is controlled by the intent of the parties signing it"). Rather, plaintiffs' cases confirm that, under Illinois law, "in determining whether a provision is a release, the intention of the parties is controlling." *Malek*, 2023 IL App (1st) 220732, ¶ 20 (cleaned up); *see Pate*, 75 Ill. App. 3d at 236-37.

Thus, Illinois courts have consistently recognized that an agreement to resolve a case operates as a waiver of the right to litigate further, even without an express release provision. *See, e.g., Fishburn v. Barker*, 165 Ill. App. 3d 229, 230 (3d Dist. 1988); *Lampe v. 0' Toole*, 292 Ill. App. 3d 144, 146-47 (2nd Dist. 1997). For example, in *Fishburn*, the court ruled that an oral agreement to settle a case resulted in a waiver of the plaintiff's right to further litigate, even though "no release was executed, and the plaintiff [was] not willing to execute a release." 165 Ill. App. 3d at 230.

Other courts applying similar contract principles have reached the same conclusion. *See Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 254 n.7 (5th Cir. 2012). In *Martin*, union members argued that a class action settlement agreement signed by a union representative did not resolve their claims in part

because it did not include an express release of claims. *Id.* The Fifth Circuit disagreed, concluding that the agreement's language, which provided that the "parties now desire to settle the dispute between them on the terms and conditions set forth herein" demonstrated an intent to waive the right to further litigate those claims. *Id.*

Here, like in *Martin*, the agreement provides that it was negotiated to "resolve the claims raised by this action as set forth in Plaintiffs' Third Amended Complaint," and served as "an agreement for settling this litigation." Doc. 711-1 at 2; Doc. 3047-2. The language of the agreement unambiguously demonstrates the parties' intent to resolve the case, such that the parties waived their rights to further litigate those claims, even absent an express release.

Plaintiffs nonetheless contend that the agreement should have said "more" if it was intended to express that the parties "surrendered the right to litigate the underlying claims" because Illinois courts "will not add language to a contract, nor add words or terms to an agreement to change the plain meaning of the agreement." AT Br. 33-35 (citing *Sheehy v. Sheehy*, 299 Ill. App. 3d 996, 1001 (1st Dist. 1998), and *RIV VIL, Inc. v. Tucker*, 979 F. Supp. 645, 654 (N.D. Ill. 1997)). But the district court did not "add words or terms" to the agreement. It merely recognized the clearly expressed intent for the agreement to "resolve the claims" and reach "an agreement for settling this litigation," Doc. 711-1 at 2; Doc. 3047-2 at 2, which is consistent with the principle that "a binding settlement agreement generally moots the underlying claims in the suit," *Daniels*,147 F.4th at 783.

Plaintiffs' reliance on *Shapo*, 463 F.3d 641, is equally misplaced for two reasons. AT Br. 34-35. First, *Shapo* does not address the core issue now before this court — whether the language of the agreement shows that the parties intended it to resolve the case. *See Daniels*, 147 F.4th at 786. Second, the parties and the court *did* aim to adopt the second of the two methods suggested in *Shapo*. Specifically, the parties resolved this litigation in the agreement, *see* Doc. 711-1 at 2 (SSA5), and the district court retained ongoing enforcement jurisdiction when it approved the settlement because it did not immediately dismiss the case, *see* Doc. 710 (A1) ("in the interest of fairness to the class, the Court must continue to provide a forum to address issues of compliance and performance of the terms of the Settlement").

### 3. The agreement was not contingent on court findings of compliance but instead required plaintiffs to demonstrate violations to extend its term.

Relying on the May 2016 final approval order, plaintiffs argue that the agreement did not moot their claims because the settlement "required findings by the court that Defendants had complied" before the case would terminate. AT Br. 22-23, 35-39. They further assert that in 2022, defendants "had not complied with 44 terms of the" agreement, so the "terms of the Settlement" were not met, the agreement never became "final," and it did not moot their claims. *Id.* at 39-41.

Plaintiffs' argument misinterprets the approval order and settlement, both of which demonstrated the finality of the agreement. As discussed, the agreement became final when the court approved the settlement. *See supra* pp. 30-33. And the approval order itself reflected that the court granted final approval of the settlement

under Fed. R. Civ. P. 23(e), upon finding that the agreement was "a fair, reasonable, and adequate resolution of the claims." Doc. 710 (SSA1). Plaintiffs' argument that the approval order withheld final approval until some later date is thus contradicted by the order's language.

In any case, plaintiffs overlook that defendants' obligations under the agreement could be discharged in one of two ways. First, if the district court "found that Defendants are in substantial compliance" with any term of the agreement, then its jurisdiction with respect to those provisions would terminate automatically on the agreement's end date. Doc. 3047-2 at 23 (SSA61). Second, in the absence of substantial-compliance findings, the court had discretion to extend the agreement beyond the fixed termination date "for periods of time not more than two years from any finding of violation with respect to any provisions of this Settlement Agreement for which the Court has determined that Defendants are not in substantial compliance." *Id.* at 23-24 (SSA61-62).

To extend the court's enforcement jurisdiction over provisions for which plaintiffs believed there was not substantial compliance, *plaintiffs* had the burden of demonstrating that an extension was warranted by showing a "violation" of the agreement's terms. *Id.* If plaintiffs made that showing, then the court could extend the agreement beyond the termination date as to those provisions. *Id.* But if plaintiffs failed to show a "violation" and obtain a court order extending the term, then "the terms of the Settlement [were] met" under the final approval order. Doc. 710 (SSA1). In other words, neither the agreement nor the approval order required

findings that defendants were in substantial compliance with all terms of the agreement to trigger dismissal of this action "with prejudice." Plaintiffs' insistence that the district court was required under the approval order to make "substantial compliance" findings cannot be squared with the agreement's dispute resolution procedures or its provision relating to termination. *See* Doc. 711-1 at 29-30 (SSA32-33).

As such, by the agreement's plain language, the "terms of the Settlement," Doc. 710 (SSA1), were met when the agreement expired in July 2022. In early 2022, plaintiffs sought an extension of several of the agreement's terms but failed to carry their burden to demonstrate that their requested extension was warranted. *See* Doc. 3484 at 2-3. At that time, the parties agreed that defendants had complied with more than 60 percent of the settlement provisions but could not agree on whether they had achieved substantial compliance on the remaining 41 terms. Doc. 3788 at 11. Plaintiffs therefore moved for a finding that defendants' alleged violations warranted an extension of the agreement as to those disputed terms. *Id.* at 13-14. The district court denied that motion and allowed the agreement to expire by its terms. *Id.*

Plaintiffs' reading of the approval order is therefore at odds with the terms of the agreement, which provides that the agreement resolved plaintiffs' claims when it was approved. Even so, under the agreement, the "terms of the Settlement" were met on the termination date because, at that time, there were no outstanding findings of substantial noncompliance by the court. As the district court concluded,

this case should have been dismissed with prejudice pursuant to the agreement and approval order at that time. *See* Doc. 3755 at 5-6.

**4. Nothing in the fairness hearing transcript or class notice suggests that the parties did not intend to finally resolve this case.**

Plaintiffs also argue that the transcript of the final fairness hearing and class notice show that the parties never intended the agreement to be the "end of the road" for their action. AT Br. 12. As a threshold matter, plaintiffs first raised these documents in their Fed. R. Civ. P. 59(e) motion, even though they were part of the district court record and thus known to the parties. *See* Doc. 3813 at 6 (A23). The district court therefore acted within its direction when it declined to consider these materials. *See Barrington Music Prods. v. Music & Arts Ctr.*, 924 F.3d 966, 968 (7th Cir. 2019); *Burritt v. Ditlefsen*, 807 F.3d 239, 252-53 (7th Cir. 2015) (Rule 59(e) relief is warranted only if moving party presents "newly discovered evidence" that was not available at the time of judgment or "points to evidence in the record that clearly establishes a manifest error of law or fact"). Plaintiffs have not raised any argument challenging the district court's decision not to consider that evidence and thus have forfeited any challenge to the judgment on that basis. *Motorola Sols., Inc. v. Hytera Commc'ns. Corp., Ltd.*, 108 F.4th 458, 492-93 (7th Cir. 2024) ("An issue that falls within the scope of the judgment appealed from that is not raised by the appellant in its opening brief on appeal is necessarily waived.") (cleaned up).

That aside, neither the hearing transcript nor the class notice demonstrate that the parties did not intend their settlement to be a final resolution of the case.

During the fairness hearing, the district court raised questions about its enforcement jurisdiction and whether it would dismiss the case upon approving the settlement. *See* Doc. 3798-2 at 79-85 (SSA150-56). In other words, the court's questions addressed the principles elucidated in *Shapo*, and the question of how to complete a settlement while also ensuring that the court retained ongoing oversight and enforcement authority. *Id.* at 6 (acknowledging that the court and parties were engaged in "discussion of case law . . . including *Shapo*"). Specifically, the court expressed concern that if it dismissed the action with prejudice pursuant to the settlement, thereby terminating federal jurisdiction, it would lose jurisdiction to enforce the settlement. *Id.* at 85-87 (citing *Shapo*, 463 F.3d at 643-44, and *Lynch, Inc. v. Samatamason, Inc.*, 279 F.3d 487, 489 (7th Cir. 2002)). The parties, in turn, explained their view that the settlement was structured to allow for ongoing court oversight consistent with *Shapo* and its progeny. *Id.* at 87-88 (SSA158-59). Nothing in the hearing colloquy suggests that the parties questioned whether the agreement resolved plaintiffs' claims. That was addressed by the plain language of the agreement.

Plaintiffs also cite the segment of the class notice, which states that "[i]f the [Department] fails to live up to its promises, the matter can return to active litigation." Doc. 289. But here, too, the language merely informed the class that plaintiffs could seek to enforce the settlement, if necessary, *id.,* under the agreement's dispute resolution provisions, Doc. 711-1 at 29-30 (SSA32-33). Notably, plaintiffs took steps to enforce the settlement on several occasions. *See, e.g.,* Doc.

3794 at 4-5 (summarizing enforcement proceedings); *Daniels*, 147 F.4th at 781-82 (same).

#### 5. The parties' decision to amend the agreement in 2020 did not suggest that the agreement did not moot plaintiffs' claims.

Plaintiffs argue that the May 2020 "corrected second amended agreement" "would not have been entered into by the parties and approved by the court if Plaintiffs' claims were moot." AT Br. 41-44. Specifically, they contend that defendants were unlikely to agree to the amended terms proposed in May 2020 and memorialized in the amended agreement, including the extension of the settlement's termination date to April 23, 2021, if they believed that they could simply wait for the then-operative agreement to expire on July 7, 2020. *Id.* at 41-42.

But plaintiffs' speculation about defendants' litigation strategy is not evidence of defendants' intent. Besides, plaintiffs' argument fails to consider the context in which the parties amended the agreement. In May 2020, when the parties agreed to modify the agreement, the *Rasho* appeal was pending, and the underlying permanent injunction orders remained in effect. That context, along with myriad other factors, could have informed defendants' decision to agree to the amendment. For that reason, plaintiffs' speculation about what the parties assumed or intended cannot overcome the express language of the agreement, which provided that the parties negotiated to "resolve the claims raised by this action" and enter into "an agreement for settling this litigation." Doc. 3047-2 at 23-24.

Plaintiffs' proffered "explanation" for why defendants agreed to amend the agreement — because they understood it to be entered into a "performance-dependent, conditional" and "time-limited" covenant not to sue, rather than a settlement — is incorrect. AT Br. 42. As noted, under Illinois law, the extent to which an agreement provision is construed "as a release, an accord and satisfaction, or a covenant not to sue depends upon the words used, the amount paid, the substance of the agreement and the intention of the parties." *Malek*, 2023 IL App (1st) 220723, ¶ 20. Here, nothing in the agreement suggests that it was a "covenant not to sue." Rather, the agreement expressly provided that it was a "settlement agreement" to "resolve the claims raised by this action," and "an agreement for settling this litigation." Doc. 3047-2 at 2 (SSA40). In other words, the agreement contains no support for plaintiffs' assertion that it was really a "covenant not to sue." AT Br. 42. All evidence indicates that it was a resolution of this case that became effective upon final approval by the district court. Doc. 3047 at 2, 35 (SSA40, 63).

## III. This case should have terminated upon the expiration of the district court's enforcement authority, even as plaintiffs can pursue any new claims they may feel they have in another action.

Plaintiffs also argue that even if the agreement mooted the claims in the then-operative complaint, they could still assert any new claims in their later-filed fifth amended complaint. AT Br. 44-45. Their argument misunderstands the district court's subject matter jurisdiction. As the court explained, the agreement "presented intervening circumstances" that mooted this case as a whole. Doc. 3794 at 10 (A10) (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). At that point, there ceased

to be a case or controversy between the parties about plaintiffs' legal rights. *See Daniels*, 147 F.4th at 785. The court therefore could not exercise jurisdiction over an amended complaint. *See Already, LLC*, 568 U.S. at 91 (when a case becomes moot, there is "no longer a 'Case' or 'Controversy' for purposes of Article III"); *see also Corey H. v. Chi. Bd. of Educ.*, 528 F. App'x 666, 668-69 & n.2 (7th Cir. 2013) (once court's enforcement authority over consent decree expired, the entire case concluded).

But plaintiffs are not without a remedy, as plaintiffs may avail themselves of the federal forum to assert new claims alleging violations of their federal rights. Indeed, as the district court observed, members of this class are currently pursuing substantially similar claims to the claims asserted in the fifth amended complaint in the *Hilliard* action, with representation provided by attorneys also representing plaintiffs in this action. *See* Doc. 3794 at 7.

Lastly, plaintiffs ask this court to "transfer this matter for consolidation with *Hilliard,*" pursuant to 18 U.S.C. § 1404(a) AT Br. 49. Because plaintiffs make this request in their prayer for relief, without developing any factual or legal argument, it may be deemed forfeited. *See Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F. 3d 392, 397 (7th Cir. 2000) (where party "fails to develop factual basis of a claim on appeal, and instead merely draws and relies upon bare conclusions," the argument is waived or forfeited). In any case, their request should be denied as improper under the change of venue statute because it was not first made in the district court. 28 U.S.C.

§ 1404(a) ("a district court may transfer any civil action to any other district or division where it might have been brought").

## CONCLUSION

For the foregoing reasons, Defendants-Appellees Latoya Hughes, Melvin Hinton, and William Puga ask this court to affirm the district court's judgment dismissing this action in its entirety.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

Attorneys for Defendants-Appellees


/s/ Christina T. Hansen
**CHRISTINA T. HANSEN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-6569 (office)
(872) 272-0819 (cell)
Christina.Hansen@ilag.gov


September 4, 2026

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 7th Cir. R. 32 and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 365, in 12-point Century Schoolbook BT font, and complies with Fed. R. App. P. 32(a)(7)(B)(i) in that the brief contains 12,709 words.

/s/ Christina T. Hansen
CHRISTINA T. HANSEN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5659 (office)
(872) 272-0819 (cell)
Christina.Hansen@ilag.gov

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on September 4, 2026, I electronically filed the foregoing Brief of Defendants-Appellees with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that the other participant in this case, named below, are CM/ECF users and thus will be served by the CM/ECF system:

Harold C. Hirshman
harold.hirshman@dentons.com

Diane O'Connell
diane.oconnell@dentons.com

Alan Mills
alan@uplcchicago.org

Nicole Schult
nicole@uplcchicago.org

Amanda Antholt
amanda@euipforequality.org

**CHRISTINA T. HANSEN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-6569 (office)
(872) 272-0819 (cell)
Christina.Hansen@ilag.gov